Dear Representative Pope,
¶ 0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following question:
Do the provisions of 52 O.S.Supp. 1995, § 570.10[52-570.10], whichamend the remittance requirements for the payment of proceedsfrom the sale of oil and gas, render differing provisions inexisting leases or contracts null and void?
¶ 1 Section 570.10 of Title 52 is a portion of the Production Revenue Standards Act, codified as 52 O.S.Supp. 1995, §§ 570.1[52-570.1]
to 570.15, which sets out requirements and duties of well operators concerning the rights of the other working interest owners and the royalty owners in producing oil and gas wells. In addition it gives the well operators a certain amount of leeway in making payments to owners of small royalty interests. More particularly, 52 O.S.Supp. 1995, § 570.10[52-570.10] deals with the period of time that well operators have to begin disbursing proceeds from oil and gas wells. The 1995 amendment to Section 570.10 deals only with payments due royalty interest owners by amending subsection (B)(3) which, prior to the amendment, provided:
 Proceeds from production may be remitted to the persons entitled to such proceeds semiannually for the accumulation of proceeds totaling less than Twenty-five Dollars ($25.00).
52 O.S.Supp. 1994, § 570.10[52-570.10](B)(3).
¶ 2 The 1995 amendment created different payment obligations by providing for three payment schedules:
 a. Proceeds from production may be remitted to the persons entitled to such proceeds annually for the twelve (12) months accumulation of proceeds totaling at least Ten Dollars ($10.00) but less than One Hundred Dollars ($100.00). Amounts less than Ten Dollars ($10.00) may be held but shall be remitted when production ceases or by the payor upon relinquishment of payment responsibility.
 b. Proceeds totaling less than One Hundred Dollars ($100.00) but more than Twenty-five Dollars ($25.00) shall be remitted monthly if requested by the person entitled to the proceeds. Amounts less than Ten Dollars ($10.00) shall be remitted annually if requested by the person entitled to the proceeds.
 c. Before proceeds greater than Twenty-five Dollars ($25.00) may be accumulated, payor shall provide notice to the person owning interest as defined in Section 570.2 of this title, entitled to such proceeds that there is an option to be paid monthly for proceeds greater than Twenty-five Dollars ($25.00). Such notice to the person shall also provide directions for requesting monthly payment, and constitutes notice to all heirs, successors, representatives, and assigns of the person.
52 O.S.Supp. 1995, § 570.10[52-570.10](B)(3).
¶ 3 The heart of your question is whether a person who, prior to the amendment, had entered into a contract or lease which required more frequent payments is still entitled to receive royalty proceeds under the contracts rather than under the less frequent payment schedule of 52 O.S.Supp. 1995, § 570.10[52-570.10](B)(3).
¶ 4 The general rule in contract law is that a contract is to be interpreted in accordance with the laws existing at the time the contract was executed. The Oklahoma Court of Appeals inMcKinley v. Prudential Property Casualty Insurance Company,619 P.2d 1269 (Okla.Ct.App. 1980), articulated this principle of law as follows:
 Contracting parties are presumed to contract in reference to the law existing at the time the contract was entered into. The law in force when the agreement is made effective determines the validity and construction of contractual provisions.
McKinley, 619 P.2d at 1270 (citing Sinclair Oil and Gas v.Bishop, 441 P.2d 436 (Okla. 1967) and Tom P. McDermott, Inc. v.Bennett, 395 P.2d 566 (Okla. 1965)).
¶ 5 Additionally, the Court of Appeals for the Tenth Circuit when interpreting the provisions of the Production Revenue Standards Act, held that unless the Legislature clearly expresses a contrary intent, laws and amendments are to have prospective application:
 Under Oklahoma law, statutes and amendments to statutes are to be construed as operating prospectively only, unless the legislature clearly expresses an intent that it operate retroactively.
Quinlan v. Koch Oil Co., 25 F.3d 936, 941 (10th Cir. 1994) (citing Texas County Irrigation Water Resources Ass'n v.Oklahoma Water Resources Bd., 803 P.2d 1119, 1122 (Okla. 1990)).
¶ 6 In the Quinlan case, the amendment to what is now 52O.S.Supp. 1995, § 570.10[52-570.10] dealt with the retroactive application of an interest penalty. As in the present matter, the most recent amendments contain no language to demonstrate a legislative intent to retroactively apply the payment schedules in 52O.S.Supp. 1995, § 570.10[52-570.10](B)(3).
¶ 7 Since the Legislature did not expressly provide for the retroactive application of Section 570.10(B)(3) and, under general contract law, a contract is to be interpreted in accordance with the laws existing at the time a contract was executed, the payment schedules in contracts or leases executed prior to the effective date of the differing payment schedules in52 O.S.Supp. 1995, § 570.10[52-570.10](B)(3) — July 1, 1995 — control the contracting parties' obligations.
¶ 8 It is, therefore, the official Opinion of the AttorneyGeneral that:
1. The Legislature did not intend that the royalty interestprovisions of 52 O.S.Supp. 1993, § 570.10[52-570.10] be retroactivelyapplied.
2. Accordingly, payment schedules established in contracts orleases which were entered into prior to July 1, 1995, theeffective date of 52 O.S.Supp. 1995, § 570.10(B)(3), andwhich provided for royalty payments on a different schedule thanthat in the amended statute are governed by the terms of thecontract or lease, not the provisions of the amended statute.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
ROSS N. JOHNSON ASSISTANT ATTORNEY GENERAL